Oliver D. Miller died intestate, May 22d 1924, leaving an estate of some $85,000 in personalty. He had never married; he left him surviving as his nearest kin Elizabeth Curtiss, a maternal aunt, and Henry O. Miller, a paternal uncle. There also survived him a number of children of deceased uncles and aunts, and these children claim to share in the distribution as being entitled to the shares which their respective parents would have taken, if living.
The Union county orphans court decreed distribution to the surviving aunt and uncle, excluding the children of deceased aunts and uncles, and the latter appeal.
The question for determination is the correct interpretation of the statutory provisions for the distribution of the *Page 87 
estate of an intestate decedent, as they existed at the date of Oliver D. Miller's death.
These provisions were incorporated in the Orphans Court act, Revision of 1898, as sections 168 and 169 thereof. Section 168 contains a general direction as to the distribution; section 169 comprises a definite and detailed scheme therefor. At the decedent's death in 1924 section 168 remained unaltered; section 169 had been amended in 1899, 1914 and 1918, and the two sections (so far as material for present consideration) provided as follows:
"168. * * * the orphans court * * * shall * * * order a just and equal distribution of the personal estate * * * among the wife and children, or children's children, if any such there be, or otherwise to the next of kindred to the intestate, in equal degrees, or legally representing their stocks, * * * pursuant to * * * the rules and limitations hereinafter set down * * *.
"169. The whole * * * estate * * * shall be distributed in manner following: * * *
"I. One-third part * * * to the husband or widow * * * and all the residue, by equal portions, to and among the children, * * * and such persons as legally represent any of such children, who may be then dead * * *.
"II. In case there be no children, nor any legal representative of them, then the whole * * * to the husband or widow * * *.
"III. If there be no husband or widow * * * then all * * * equally to and among the children; and in case there be no children nor any legal representative of any child, then equally among the parents and brothers and sisters; provided that no representative shall be admitted among collaterals after deceased brothers' and sisters' children.
"IV. If there be no husband or widow, child or any legal representative of any child, nor a parent, brother or sister, nor the representative of a deceased brother or sister, then all * * * equally to the next of kindred, in equal degree, * * * and their legal representatives as aforesaid."
(Subsections V. VI, VII and VIII provide for various cases of illegitimate children and where no kindred are known.)
Consideration of the legislation shows a comprehensive, orderly and logically natural scheme. The several subsections deal respectively with the several possible contingencies as to surviving next of kin — (except that for some reason subsection III deals with two such contingencies, instead of one) — taking them up in a natural sequence. *Page 88 
The first three subsections deal with the three possible contingencies as to surviving husband or widow and children or descendants of deceased children.
Then follows (also in subsection III) the contingency of there being no husband or widow, and no child or descendant of a deceased child, in which case distribution goes to parents and brothers and sisters, including the representatives of deceased brothers and sisters, with the proviso of no representation among collaterals after deceased brothers' and sisters' children.
Subsection IV deals with the fifth and final contingency,i.e., where there is no husband or widow, no child or representative of a child, no parent and no brother or sister or representative of a brother or sister; in that event — and only in that event — the estate goes to "the next of kindred in equal degree * * * and their legal representatives as aforesaid."
This is the contingency which exists in the case sub judice.
There is no widow, no child or child's descendant, no parent, no brother or sister or nephew or niece. The next of kindred in equal degree are, as has been said, a maternal aunt and a paternal uncle. The statute, however, does not limit distribution alone to "the next of kindred in equal degree" — it includes "their legal representatives as aforesaid."
From a reading of the two sections alone, the logical conclusion would be, without much doubt, that by the words "their legal representatives as aforesaid" the legislature meant the children, per stirpes, of deceased next of kin of equal degree with the living next of kin, bearing in mind that (as is obvious from the express wording) by "next of kindred" in this subsection is meant next of kin of remoter degree than brothers or sisters or nephews or nieces of the decedent. Section 168 speaks of persons "legally representing the stocks" of next of kindred; and in section 169, subsection I speaks of persons "legally representing deceased children," subsections II, III and IV speak of "legal representatives" of deceased children, and subsections II and III speak of "representatives" of deceased brothers and sisters. There is no doubt that in all these instances by "representatives" is meant the descendants per stirpes, except that as to the representatives *Page 89 
of deceased brothers and sisters the descendants are, in subsection III expressly, and in subsection IV impliedly, limited to children.
It follows, therefore, that the same meaning is to be asscribed to the word in subsection IV where it is used in reference to the still remoter next of kin. There may be some little doubt as to just what the additional words "as aforesaid" mean, or why they are added; but there would seem to be no room for doubt that "and their legal representatives" is not surplusage or without meaning, nor for doubt that it means "and the descendants, perstirpes of deceased next of kin of equal degree with the living [remote] next of kin."
It is strenuously contended by the respondents that the words "as aforesaid" refer back to subsection III and import into subsection IV the express proviso in subsection III that no representation shall be admitted among collaterals after deceased brothers' and sisters' children, and that, therefore, children of deceased aunts and uncles are thereby excluded from participation in the distribution. Their argument is that the original statute of distribution in this state, enacted in 1795 as section 13 of the act concerning executors and the administration and distribution of intestates' estates (Elm. Dig. tit. "Executorsand Administrators" 167 § 16), contained this same proviso "that no representation shall be admitted among collaterals after brothers' and sisters' children;" that it continued therein throughout successive revisions for nearly a hundred years until excised by amendment in 1899; that although omitted from 1899 until 1918, it was restored in 1918 in precisely the same language; that by repeated adjudications of the courts of this state, including the court of last resort, prior to the amendment of 1899, it was held that under the meaning of that proviso living uncles and aunts would take to the exclusion of nephews and nieces; that in the act of 1795 there is the same wording as is now found in subsection IV of section 169 "to the next of kindred in equal degree, of or unto the intestate and their legal representatives as aforesaid," and that this wording has remained unchanged from 1795 down to the present time; that in the opinion of the court of errors and appeals (Smith v. *Page 90 McDonald, 71 N.J. Eq. 261 — at p. 262) the words "as aforesaid" in this phrase referred to the proviso limiting representation among collaterals; that the proviso as restored in 1918 must be deemed to have the same meaning that it had from 1795 to 1899, and that since the restoration of the proviso in 1918 the words "as aforesaid" must again be deemed to refer to that proviso.
The argument is ingenious and not without plausibility. Indeed, if the statute had been restored by the amendment of 1918 to the same form, or even essentially the same form, that it had from 1795 down to 1899, the argument might, perhaps, be deemed sound and controlling, but such was not the fact. The act, after the amendment of 1918, was very different, both in form and substance, from what it was prior to the amendment of 1899.
From 1795 to 1899 the act directed specific distribution, under the various contingencies, to widow and children and the representatives of deceased children, and then followed with a general direction of distribution in the event of there being no child or child's representative, of one-half to the next of kindred and their representatives — making no special provisions for parents or brothers or sisters — and the proviso limiting representation among collaterals followed this general provision. Next came a provision, in the event of no widow surviving, directing specifically as to children, and, if no children, then the same general provision to next of kin and their representatives "as aforesaid." Quite logically the words "as aforesaid" were held to import the same limitation in the general provision where it occurred the second time, as was specifically expressed where it occurred the first time. In both instances the class referred to in the general provision was exactly the same.
In 1899 the proviso limiting representation was excised. In 1914 it remained excised, but a new specific provision as to distribution to parents, brothers and sisters was inserted ahead of the omnibus provision for next of kin generally, and the latter was amended so as to apply only in default of parents, brothers and sisters as well as widow, children and children's representatives. Obviously, therefore, the "next of *Page 91 
kin" referred to in the omnibus provision meant next of kin remoter than parents or brothers and sisters, and the "legal representatives as aforesaid" of such next of kin, meant the representatives of next of kin remoter than brothers or sisters — in other words, it provided for distribution to representatives of collaterals remoter than brothers and sisters. The words "as aforesaid," whatever they referred to, could not have referred to the limiting proviso, for there was no limiting proviso.
In 1918 this new specific provision for parents, brothers and sisters was altered to include representatives of deceased brothers and sisters, and the limiting proviso was restored as a part of that specific provision. The general provision for next of kin "and their legal representatives as aforesaid" remained unchanged, except that the contingency under which it should operate was altered so that it should operate only where there was no legal representative of a deceased brother or sister (and this, in view of the previous limiting proviso, meant no child
of a deceased brother or sister), as well as no widow, child, child's representative, parent, brother or sister. Logically, then, the words "as aforesaid" would be deemed to mean just what they did in 1914, and, as has already been noted, whatever that was, it was not the limiting proviso.
Equally logically the mind must reject the idea that by the restoration of the limiting proviso, this time as a part of a new provision and obviously referring specifically to brothers and sisters, the legislature intended that it should be carried over by implication into another subsection referring to an entirely different class. Moreover, since the class referred to as next of kin in subsection IV is a class which specifically does not include brothers or sisters or nephews or nieces, i.e., is a class composed entirely of persons remoter than brothers' and sisters' children, and since the provision directs distribution to the nearest in equal degree of such class "and their legalrepresentatives," to say that the words "as aforesaid" mean that there can be no representation beyond brothers' and sisters' children is to say that there can be no representation whatever. The argument thus amounts to *Page 92 
saying that the legislature in one breath — in one clause of six words — has said both that there shall be, and that there shall not be, representation among this class of remote next of kin. Clearly such an implication of utter futility will be ascribed to legislative language only in case of absolute necessity, which does not exist here.
If it were necessary to decide that either the words "and their legal representatives" or the words "as aforesaid" are meaningless and intended to be of no effect, the natural and logical result would be to discard the latter rather than the former. It is not, however, necessary to say that the words "as aforesaid" have no meaning. They may refer back to the phrase "legally representing their stock," c., in section 168. Neither is it necessary in the present case to adjudicate just what they do mean; it is sufficient to say that they do not mean what the respondents contend they do.
The orphans court erred in excluding the appellants from participation in the distribution.
Decree accordingly. *Page 93