A petition has been preferred to this court for a rehearing of an order made in this court November 27th, 1927, that an appeal to this court from a decree made by the Hudson county orphans court, be dismissed and the decree of the orphans court be affirmed. The petitioners are Mollie Hughes, Bessie M. Gaynor, Frank M. Gaynor, John F. Gaynor, Hugh F. Gaynor, William J. Gaynor, Andrew J. Gaynor and Edward J. Gaynor; they show that on November 11th, 1925, Daniel O'Mara, of the city of Jersey City, county of Hudson and State of New Jersey, died intestate, and on December 19th, 1925, Honorable James F. Minturn was appointed administrator by the Hudson county orphans court; that the administrator filed an intermediate account in said court showing cash left by decedent amounting to $69,280.32; that said Daniel O'Mara left him surviving, among others, the petitioners, who were children of John F. Gaynor, deceased; that John F. Gaynor was a first cousin of the decedent; that on February 28th, 1927, a decree was made by the Hudson *Page 313 
county orphans court adjudging the personal estate of the decedent be distributed to ten first cousins of his in the decree named as the decedent's next of kin, to the exclusion of the petitioners, who were said to be second cousins of the decedent.
On March 28th, 1927, an appeal was taken to this honorable court from the decree made by the Hudson county orphans court, and the matter was heard by a vice-ordinary, and on November 27th, 1927, the appeal to the prerogative court was dismissed and the decree of the orphans court affirmed. The reasons for dismissal of the appeal to the prerogative court reside in the opinion thereon. In re O'Mara, 101 N.J. Eq. 713.
Since the petition of appeal was dismissed by the prerogative court, as aforesaid, the petitioners have been advised by counsel that a similar appeal, involving the same questions, was taken to the prerogative court, In re Estate of Oliver D. Miller,deceased, reported in 103 N.J. Eq. 86; which decision was affirmed by the New Jersey court of errors and appeals, May 20th, 1929, and is to be found in 104 N.J. Eq. 491.
The court of errors and appeals there decided directly opposite to the views expressed in the opinion filed by this court in this cause, and by virtue of such decision in the Miller Case the petitioners have been advised that they are entitled to participate in the distribution of the estate of Daniel O'Mara, deceased.
On October 21st, 1929, the petitioners applied to the vice-ordinary for a rehearing of the case, or for leave to file a bill of review, and the vice-ordinary advised petitioners' counsel that he was unauthorized to grant any relief because the time for rehearing, or the filing of a bill for review, had expired, and for the reason that the application was not based on fraud or newly discovered evidence.
Petitioners further showed that the administrator had not yet made distribution of the estate of the decedent, and that if he made distribution of the estate to the exclusion of the petitioners in participating therein, it would work a great *Page 314 
injustice and injury upon them, since their time for appeal had expired. Petitioners therefore prayed that the order dismissing the said appeal heretofore made by this honorable court might be reopened and a rehearing had thereon, or in the alternative, that petitioners be granted leave to file a bill of review, and that in the meantime and until the further order of this court, the administrator be enjoined from making distribution of any of the assets of the estate.
The Honorable James F. Minturn, administrator of the estate of Daniel O'Mara, deceased, has presented a petition to this court stating, among other things, that on February 28th, 1927, upon his application as administrator, the Hudson county orphans court, after argument, made a decree of distribution wherein the personalty of said estate was ordered to be made to first cousins of the deceased as a class, to the exclusion of the children of deceased first cousins of the decedent; that thereupon some of the children of deceased first cousins appealed from that decree of this court, which decree of the orphans court, after argument, was affirmed by this court; that no appeal was taken from the decree of this court to the court of errors and appeals; that the administrator has not, up to this time, distributed the personalty in the above entitled estate; that he verily believes that there is a direct conflict between the decision rendered in this cause and the decision rendered in the case of In reMiller, deceased, supra; consequently, he is unable to decide what distribution should be made in the above entitled matter, and prays that this court instruct him so that he may make a just and equitable distribution of the personalty of the said Daniel O'Mara to his next of kin, according to law.
A stipulation has been filed in this cause signed by Charles J. Stamler, proctor and of counsel with petitioners Mollie Hughes and others, and by Thomas J. Brogan, proctor and of counsel with James F. Minturn, administrator of the estate of Daniel O'Mara, deceased, wherein they agree that if the ordinary renders a decision on the petition of the petitioners herein, and grants a rehearing or a bill of review sought in that petition, that then and in that event the ordinary may *Page 315 
further decide whether or not the petitioners, as children of deceased's first cousin, are entitled to share in the distribution of the personalty of which he died seized; and further, reserving the right of appeal. Mr. Hastings, counsel for respondents, came into the case after the stipulation was signed, but does not contend that the petitioners are not entitled to participate in the distribution if the Miller decision applied.
After the petition of Mollie Hughes and others had been filed, and after the stipulation aforesaid had also been filed, an order was made on the first cousins, who were the distributees mentioned in the order of the orphans court (which provided that they were the next of kin of the deceased), requiring them to show cause why a rehearing should not be had herein or leave given to file a bill of review in the above stated cause because of the changed condition arising by reason of a decision of the court of errors and appeals on the question under consideration herein. The cause has now been argued by all the parties interested and is ripe for decision.
Counsel for respondents says in his brief:
"It is true that under the Miller Case, the present case, if being heard originally would require a decision in favor of petitioners, but when the case was originally heard it was decided upon the interpretation of the statute of distribution prevailing in the court at that time and recognized for more than a century [except for the interval between 1899 and 1918], as illustrated by the decision here and many other cases includingDavis v. Vanderveer's Admr., 23 N.J. Eq. 558. Such cases and the decision here were only overturned by the Miller Case in 1928 and petitioners then had ample time to appeal but did not appeal."
As a fact they had already appealed, which appeal was dismissed and they now ask for a rehearing of that matter or for leave to file a bill of review, or for other relief. The Chancery act (P.L. 1915 p. 184) provides in rule 47 annexed thereto (P.L.1915 p. 194) that relief other than that prayed for may be given (without a prayer for general relief) to the same extent as if other and general relief had been prayed for; now chancery rule 60, edition of 1928. *Page 316 
As to laches and limitation: Chief-Justice Depew, speaking for the court of errors and appeals, in Colton v. Depew, 60 N.J. Eq. 454,
held that the statutes of limitations do not apply in terms to courts of equity, but courts of equity have always felt themselves bound by the principles of the statute, and, except in matters of strict trust and matters purely equitable in their nature, have acted in conformity with them. See, also, the remarks quoted from Chancellor Vroom (at p. 460). Now, here the matter is equitable in its nature, as it would be highly inequitable to make a distribution of this estate not in accordance with the law of the land as laid down in the opinionIn re Miller's Estate, 104 N.J. Eq. 491, court of errors and appeals.
In re Hathorn, 94 N.J. Eq. 371, the present ordinary held (atp. 374), that although parties are obliged to watch the dockets of the courts and inform themselves of the entry of decrees and orders, nevertheless, circumstances may arise which, if they do not absolve the parties from that duty, operate to relieve them of the consequences of such failure.
As the prerogative court is a court of general jurisdiction it has the inherent power to control its own decree in a cause pending therein on appeal, and to vacate or amend it as right and justice may require. See, also, In re Beam, 93 N.J. Eq. 593,595; In re Koehler's Estate, 102 N.J. Eq. 133.
In Mount v. VanNess, 34 N.J. Eq. 523, the ordinary held that an appellant could not, by the mistake of the surrogate, be deprived of his right of appeal.
The supreme court in Haines v. Seabrook Farms Co., 1 N.J.Mis. R. 139 (at p. 140), said that the recognized rule of practice is that the validity of an appeal is a matter for the appellate court.
But this case does not depend upon the right of appeal, dissociated from all other rights. If it did, the petitioners, children of a deceased first cousin of decedent, may be out by lapse of time. And, assuming that an appeal could not now be reinstated even in the circumstances of this case, nevertheless, where a fund remains in the hands of an administrator *Page 317 
undistributed, and the construction of a statute as to its distribution by the court of last resort in this state changes the law as directed by the orphans court and the prerogative court on appeal herein, and whose decisions differ from that of the court of last resort, it would be intolerable to permit a distribution in accordance with the orphans court and prerogative court where, as stated, the court of last resort has construed the statute differently, which means that ever since its enactment the law has been different from that laid down by the lower courts in this case.
The question is one tantamount to the discovery of new evidence which could not with diligence have been discovered within the time limited for an appeal or the filing of a bill of review, now one year, but formerly three years. Watkinson v. Watkinson,68 N.J. Eq. 632. But the courts are not restricted to newly discovered evidence; the doctrine extends to newly discoveredmatter which need not be evidence. Judge Vroom, speaking for the court of errors and appeals in Watkinson v. Watkinson, said (at p. 634), that a bill of review must rest on error in law upon the face of the decree or upon some new matter which has been discovered after the decree and could not possibly have been used when the decree was made.
In Daniel's Ch. Pr. Pl. [*]1576 et seq., it is said that if the bill is filed on the ground of error, the decree complained of must be contrary to some statutory enactment or some principle or rule of law or equity recognized and acknowledged or settledby decision or be at variance with the forms and practice of the court; that if the bill is filed on the ground of new matter
discovered since the decree, the new matter must be relevant and material and such as might properly have occasioned a different determination; that the new matter need not necessarily be evidence upon matters in issue in the original suit.
The old practice was to file a petition for leave to review the decree, and the court had to be satisfied of the sufficiency of the application and grant leave to file the bill. Watkinson v.Watkinson, supra (at p. 634). However, that has been *Page 318 
changed, and in Mitchell v. Mitchell, 97 N.J. Eq. 298, the court of errors and appeals held that the old equity practice in cases where it was sought to review a final decree after the time to appeal had expired, was to petition for leave to file a bill of review, but the simpler course of a direct petition to open the decree is now recognized; and that after time to appeal has expired, a final decree will not be opened except on the ground of newly discovered evidence, or where some special equityappears, such as fraud or ignorance of the proceedings for which petitioner is not responsible.
In United States v. Samperyac, 1 Hempst. Rep. 118, Judge Johnson gave a very learned discussion of the law concerning rehearing, and observed (at p. 135): "We suppose the judges of the court of appeals of Kentucky mean to say, that after certain material matters of fact have been put in issue, and evidence adduced by each party to that issue, and a decree rendered, a bill of review will not lie merely upon the discovery of additional testimony to the same point, unless that evidence consists of records. In which event they admit that a bill of review will lie. According, then, to the principles settled in Kenucky, a case is made out for a bill of review; for the present bill contains the allegations that important record evidence has been discovered conducing to prove that the title papers of the petitioner were false, fraudulent and forged. The court of appeals of Kentucky, in the case of Respass v. M'Clanahan,3 Ky. 342, say: `There is an important difference between the discovery of a matter or fact itself, which, though it existed at the former hearing, was not then known by the party to exist, or which was not alleged or put in issue by either party, and the discovery of new witnesses, or proof of a matter which was then known or in issue. In the former cause, the party not knowing the fact, and it not being particularly in issue, there was nothing to put him on the search, either of the fact or the evidence of the fact, and therefore the presumption is in his favor, that, as the matter made for him, his failure to show the matter was not owing to his negligence or fault. They further say, after the most careful search, they cannot find *Page 319 
one case reported in which a bill of review has been allowed on the discovery of new witnesses to prove a fact which had been before in issue, although there are many where bills of review have been sustained on the discovery of records or other writings relating to the title which was generally put in issue.'"
And in Bush v. Madeira's Heirs, 53 Ky. 212, it was held that a bill of review lies in behalf of a party upon the discovery of written evidence tending to establish a material fact in issue in the suit, even after it has been decided by the court of appeals, if from the facts alleged it was not to be expected that the party could have found such evidence unless by extreme vigilance; and a review was allowed.
The doctrine of these cases has special application to the case at bar. Doubtless, in a case depending upon facts strictly interpartes a review may not be had by the discovery of new evidence which is merely cumulative, and which might overthrow a fact established as existing between those parties upon evidence sufficient at the time the cause was heard; but that where a statute or a decision of a court, or other written matter, in equity and good conscience would change a result reached in a given cause, especially in a case which on all fours involves a construction of the same statute applicable to both cases, as here, and the statute has been construed by the court of errors and appeals differently from the construction in the case at bar by the lower tribunals, and the new matter alleged for error consists of a decision of the highest court, which makes the law of the land, it should be given effect and a rehearing should be granted on the strength of it.
In other words: Even after a distribution ordered by the orphans court and sustained in the prerogative court on appeal, if that distribution has not been made, and the court of errors and appeals in another case so construes the statute of distribution as to compel a different distribution in all cases under such statute, because the construction is general in its effect and application, a review should be granted in a given case, otherwise we would have a distribution not in accordance with the law. *Page 320 
The amended petition for rehearing and other relief filed by Mollie Hughes and others shows that the decedent left him surviving, among others, the petitioners, who are children of John F. Gaynor, deceased; he being a first cousin of the decedent. This petition is verified by Mollie Hughes. On the argument of the last order herein, the first cousins, to whom distribution has been directed, did not dispute the relationship of Mrs. Hughes and the others mentioned, to the decedent. The argument was only to the effect that distribution should be made to the first cousins, as already directed by the orphans court, and that it was too late for petitioners to make application for a distribution according to the law of the land as pronounced by the court of errors and appeals.
In the opinion In re O'Mara, 101 N.J. Eq. 713, a motion was made to dismiss the petition of appeal filed by Mollie Hughes and others, as it disclosed no meritorious ground of appeal, because as herein held under the Distribution act, section 169, paragraph 3, as amended by P.L. 1918 p. 180, descendants of deceased first cousins could not take by representation, since certain words in paragraph 4 related to the provision in paragraph 3; and the petition was by this court dismissed, and the decree of the orphans court affirmed.
In re Miller, 104 N.J. Eq. 491, on appeal from the decision of Vice-Ordinary Buchanan, reported in 103 N.J. Eq. 86, was affirmed for the reasons stated in the opinion filed by him in the prerogative court. That made his reasoning that of the court of errors and appeals. And he decided that under the statute of distribution (the same legislation considered, construed and decided in the O'Mara Case, 101 N.J. Eq. 713), distribution was not limited to the surviving persons nearest related in equal degree to the decedent if there were also living descendants representing deceased relatives of equal degree; that such representatives would share per stirpes with the surviving next of kin; that where an unmarried man died intestate survived by a paternal uncle and a maternal aunt as his nearest relatives, and *Page 321 
survived also by children of deceased uncles and aunts, distribution would be decreed to and among the uncle and aunt and the cousins, the latter taking the shares which their respective parents would have taken if living. And the law so pronounced since the deliverance of the court of errors and appeals in theMiller Case, May 20th, 1929, has been the law of this state; and is the only proper and allowable construction of the statute of distributions as it has existed since the amendment of 1918.
Daniel O'Mara died November 11th, 1925, which in round numbers was seven and a half years after the enactment of the amendment of 1918.
Since May 20th, 1929, the date of the opinion of the court of errors and appeals, this has been new matter governing the distribution of the personal estate of intestate decedents in this state dying since the approval of the statute, which was February 16th, 1918. P.L. 1918 p. 179, 183. And the present application was made on October 21st, 1929, to the vice-ordinary for a rehearing or for leave to file a bill of review, and he advised the petitioners that he was unauthorized to grant any relief because the time for a rehearing or the filing of a bill for review had expired, and for the reason that the application was not based on fraud or newly discovered evidence.
I am constrained to the opinion that the vice-ordinary took too narrow a view of the law relating to rehearing or the filing of bills for review, for it clearly appears that neither fraud nor newly discovered evidence entirely control the case; but that new discovered matter, such as a decision on the question, which is controlling, especially so when the fund upon which the decision would operate, as here, has not been distributed. I repeat, it would be intolerable for a court to order an inequitable distribution, no matter what the decisions of the court below, when the court of last resort has construed a statute, no matter how old, and indicated that a proper construction of that statute would require such a distribution herein as is prayed for by the descendants of the first cousin of the decedent. *Page 322 
The degree of relationship to the decedent of Mollie Hughes and her brothers and sisters as a class, is that of first cousinsonce removed. First cousins are the children of a brother and a sister, and their children, respectively, are second cousins to each other. To the original first cousin of their parent they are first cousins once removed. Mollie Hughes being the child of a deceased first cousin is a first cousin once removed to the deceased in this case. See 15 Corp. Jur. 1186 § 665 andnotes.
Let an order be entered directing the orphans court of Hudson county to amend its decree of distribution by including therein the petitioners, first cousins once removed, as distributees perstirpes, along with the first cousins of the decedent. *Page 323