**KINCAID et v CRONIN et**

Ohio Appeals, 1st Dist, Hamilton Co

No 5421. Decided January 30, 1939

Thos. X Dillon, for Addie Kincaid, appellee.

Zienonka & Kuertz, Cincinnati, and Stanley A. Silversteen, Cincinnati, for appellants.

## OPINION

By MATTHEWS, J.

This is an appeal on questions of law from a judgment of the Probate Court of Hamilton county, determining the heirs of Margaret Cronin Zinsle, deceased, who died in September, 1936, leaving surviving her the direct descendants of her deceased brothers and sister. These relatives are:

(1) Two nephews, who are the children of the intestate's brother, James Cronin.

(2) Four nephews and nieces, who are the children of John Cronin, the intestate's brother.

(3) Seven nieces and nephews, who are the children of Mary Sullivan, a sister of the intestate.

(4) One grand-niece, who is the child of a deceased child of said John Cronin.

(5) Twelve grand-nieces and nephews, who are children of three deceased of said Mary Sullivan.

The intestate had no issue, and no parent or brother or sister survived her.

The Probate Court held that the grand-nieces and grand-nephews took per stirpes or by representation the share of the deceased parent. This conclusion was reached by treating the nieces and nephews as the roots and stemming from them.

The correctness of the conclusion depends upon the interpretation and application of §§10503-4, 10503-7, 10503-8 and 10503-9, GC.

In the absence of surviving spouse, child or lineal descendant thereof, or parent, §10503-4, GC, casts the descent as follows:

"6. If there be no spouse, no children, or their lineal descendants, and no parent surviving, to the brothers and sisters, whether of the whole or of the half blood of the intestate, or their lineal descendants, per stirpes."

By §10503-7, GC, it is enacted that:

"When all the descendants of an intestate, in a direct line of descent, are on an equal degree of consanguinity to the intestate, whether children, grandchildren or great-grandchildren, or of a more remote degree of consanguinity to such intestate, the estate shall pass to such persons of equal degree of consanguinity to such intestate in equal parts, however remote from the intestate such equal and common degree of consanguity may be."

And by §10503-9, GC, as amended in 1935, it is provided that:

"The provisions of the next preceding section shall apply in all cases in which the descendants of the intestate, not more remote than lineal descendants of grand parents as provided in §10503-4, entitled to

share in the estate, are of unequal degree of consanguinity to the intestate, so that those who are of the nearest degree of consanguinity, will take the share to which he or she would have been entitled, had all the descendants in the same degree of consanguinity with him or her, who died leaving issue, been living."

In the case of **Ewers v Follin, 9 Oh St, 327,** the court construed a statute in the same language as the present section (§10503-7, **GC**), and determined its effect upon the main section of the statute of descent, as it existed at the time. The Court held:

"By the provisions of the 10th section of the act regulating descents, passed February 24, 1831, when an estate descended to nephews and nieces, legal representatives of brothers and sisters, no brother nor sister of the intestate surviving, the nephews and nieces took per capita; and if a nephew or niece had died before the intestate, leaving children, such children took per stirpes the share of the deceased parent. This rule has not been altered by the 5th, 6th, 7th, and 8th sections of the present act regulating descents. The effect of the present act is to extend, not to limit, the rule prescribed in the 10th section of the act of 1831.

H. died intestate, without issue, and never having been married, seized of an estate acquired by purchase, leaving no brothers nor sisters, but three chillren of one brother, four children of another brother, eight children of one sister, and two children and two grandchildren of another sister. HELD, that partition should be made by dividing the estate into eighteen shares, each nephew and niece taking one, and the two children of the deceased nephew one."

After the enactment of the Probate Code in 1931, to take effect on January 1st, 1932, it became a debatable question whether this language incorporated in the Probate Code as §10503-7, **GC,** should be given the same construction in view of the change in the phraseology of the main section (§10503-4, **GC),** of the statute of descent. This question was presented to the Supreme Court in **Snograss v Bedell, 134 Oh St, 311,** and the court sustained the validity of the construction in **Ewers v Follin, supra,** as applied to §10503-7, **GC.** .The Court said:

"In **Ewers v Follin, 9 Oh St, 327,** this court held that a statute which contained practically the same wording as §10503-7, **GC,** was to apply in 'every case' in which an estate was to be divided among a class of descendants, whether their consanguinity to the intestate be lineal or collateral. §10503-7, **GC,** was formerly §8581, **GC,** which has read exactly as it does now since March 14, 1853, and has been construed many times by this court.

This rule that where the descendants, either lineal or collateral, are of equal degree of consanguinity, they take per capita as heirs in their own right, and not by representation has been consistently approved and followed in this state. See **Dutoit v Doyle, 16 Oh St, 400, 405; Parsons v Parsons, 52 Oh St, 470, 40 N. E. 165; Hasse v Morrison, 110 Oh St, 153, 143 N. E., 551.**

If the statute was properly construed in Ewers v Follin, supra, the judgment of the Court of Appeals should be reversed. The Court of Appeals itself recognized the precedents of Ewers v Follin, supra, and Hasse v Morrison, supra, but said that 'subsequent legislation modifying other related provisions may require a restricted meaning to be given, notwithstanding, a judicial construction given when the language was in a different setting.' We are unable to conclude that any construction limiting the application of the provisions of §10503-7 GC, to lineal descendants could be made without expressly overruling a long line of decisions of this court commencing with Ewers v Follin, supra."

The court then applied the section so construed to the descendants of grandparents designated by paragraph 8 of §10503-4, **GC.**

It is suggested that this does not require the application of the rule to the descendants of brothers and sisters. We are of the opinion that the reasoning does require us to so construe these sections as to enforce the rule of equality in all cases to the class of those in the nearest degree of consanquinity to the intestate.

For these reasons, the judgment is affirmed.

ROSS, PJ, and HAMILTON, J, concur.