**SHEELER, Admrx., Plaintiff v. BURKHART et, Defendants.**

Probate Court, Franklin County.

No. 141871. Decided July 24, 1951.

Frank H. Ward, Columbus, for administratrix.
B. F. Levinson, Columbus, for certain heirs.
Charles A. Eberly, Columbus, for certain heirs.

## OPINION

By McCLELLAND, PJ.

This is an action filed by the administratrix of the Estate of Harry E. Towns, deceased, to determine his heirs, said decedent having died intestate.

At the hearing the names of all possible heirs and their relationships were disclosed, but counsel for the administratrix is in doubt as to how the statutes of descent and distribution will operate in this case.

The heirs come under **paragraph 8** of **§10503-4 GC,** all being lineal descendants of grandparents.

The nearest surviving relatives of the decedent on the paternal grandparents' side are two first cousins. There were also four other first cousins who are deceased, but they left issue surviving the decedent. Under said section of the General Code, therefore, the one-half of the estate which descends to the lineal descendants of the paternal grandparents is to be divided into six parts, one-sixth part going to each of the two surviving first cousins, and one-sixth part going to the issue of each of the four deceased first cousins, per stirpes, each of the four deceased first cousins being the root from which their living issue take. **Snodgrass v. Bedell, 134 Oh St 311.**

The brief of counsel for the administratrix sets forth the names of the lineal descendants of the paternal grandparents and the proportions in which they take, so there is no need for us to set them forth.

The one-half of the estate which descends to the lineal descendants of the maternal grandparents, however, presents

a more complicated situation due to the fact that the maternal grandmother was married twice, and of both unions there are issue living. The nearest surviving relatives of the decedent on the maternal grandparents' side are first cousins. The maternal grandmother's maiden name was Eleanor Shepherd and her first marriage was to Henry C. Walton. The lineal descendants of this union who survive the decedent are two first cousins and one child of a deceased first cousin. The second marriage of the maternal grandmother was to James Hadaway, and of this union there are surviving seven first cousins of the half blood and two children of a deceased first cousin of the half blood. The decedent was a lineal descendant (grand-child) of the first union, i. e. Eleanor Shepherd and Henry C. Walton.

It is the position of counsel for the administratrix that the one-half of the estate which descends to the lineal descendant's of the maternal grandparents is to be divided into eleven parts, and that no distinction is to be made between the first cousins of the whole blood and the first cousins of the half blood. With this position of counsel we agree.

We must confess that this situation existing among the lineal descendants of the maternal grandparents gave us no little concern. While the case of **Shepard, Admr., v. Wilson 61 Oh Ap 191,** which was approved and followed in **In Re Estate of Stevenson, 48 Abs 624** (P. C.) holds that the first cousins of the half blood share the same as first cousins of the whole blood, we at first, were not satisfied with the holding in that case. We had considerable difficulty in coming around to the position taken by the Court in that case that no significance should be attached to the use of the plural form of grandparent, where paragraph eight provides for descent to the lineal descendants **"of such deceased grandparents."** The court quoted §10213 GC as applicable to the word "grandparents" as used in the paragraph. It was our feeling, at first, that only the joint lineal descendants of the decedent's grandparents was intended by the statute. If this situation arose under the wording of paragraph eight of the 1932 Probate Code, there would be no question but what the first cousins of the half blood would take as the statute then read "to the lineal descendants, if any, **of such grandparent** or grandparents." It is our feeling likewise, that no particular significance should be attached to the use of the words "of such grandparent or grandparents" as used in said paragraph of the 1932 Probate Code. That section of the code was not very carefully drawn. What motivated the Legislature in 1935 in

amending paragraphs seven and eight of §10503-4 GC, was the decision of the Court of Appeals of Cuyahoga County, in the case of **Oakley v. Davey, 49 Oh Ap 113,** decided November 5, 1934, wherein it was held that nothing in those two paragraphs indicated an intention that an estate was to be divided equally between the paternal and maternal branches. The Legislature, upon the recommendation of the Probate Code Committee of the Ohio State Bar Association, amended the section so that the two paragraphs provide for an equal division between the paternal and maternal branches. That was the purpose of the amendment and since the estate was to be divided in halves the wording of the amendment ·of necessity had to refer to the lineal descendants of each set of grandparents and not the lineal descendants of just one grandparent.

·The civil law of descent is followed in Ohio and under that law kindred of the half blood are recognized. A good statement· of the civil law may be found in **Vol. 14 O. Jur., page 192,** which cites **Lyon v. Lyon 1 C. C. (NS) 246.** See also **Stone v. Doster, 7 C. C. (NS) 8,** and **Oldiges v. Osborn, 11 O. O. 506 (P. C.).**

Also an extensive discussion of the civil law may be found in 26 Corpus Juris Secundum, and from page 1044 we quote the following:

"it is a rule that remote collaterals' of the half blood are entitled to share with those of the whole blood in real, as well as personal property, or even to take in preference to kindred of the whole blood of a more remote degree,".

The brief of counsel for the administratrix sets forth also the names of the lineal descendants of the maternal grandparents and the proportions in which they take, so there is no need for us to set them forth. One of them Irwin Walton, had been missing for several years when the petition was filed but turned up later to claim his share, so we no longer have that question to deal with.

It is to be observed that here again, we have a case where the descendants of the intestate are on an equal degree of consanguinity to the intestate, being first cousins on both the paternal and maternal grandparents' sides. We were· confronted with the question whether §10503-7 GC would apply to a situation of this kind in the case of **Reimber v. Finnegan, 32 O. O. 391.** We held in that case that §10503-7 GC would have to yield to §10503-4 (8) GC, and that the estate was to be divided into halves in accordance with **paragraph 8** of §10503-4 GC. In that case we cited **Snodgrass v. Bedell 134 Oh St 311,** as authority for the manner in which each

one-half of the estate was to be distributed among the lineal descendants of each set of grandparents.

Counsel for the administratrix also argues that the half and half statute (§10503-5 GC) does not apply in this case. The decedent died possessed of a one-half interest in a parcel of real estate which he inherited from his wife. It is clear that this one-half interest descends directly under the half and half statute, as follows: one-half to the heirs of the decedent, and the other one-half to his deceased wife's brothers and sisters or their lineal descendants.