B. A. FRANKLIN, Admr. *et al.* Appellees, *vs.* IDA SMITH HASTINGS *et al.* Appellants.

*Opinion filed December 21, 1911—Rehearing denied Feb. 8, 1912.*

1. WILLS—*gift to aid in establishing public library is a gift to charity.* A gift to aid in the establishment and support of a public library is a gift to charity, and such gifts are looked upon with particular favor by the courts, and every presumption consistent with the language used will be indulged to sustain them.

2. SAME—*the gift to charity is regarded as the matter of substance.* If the testator has manifested a general intention to give to charity the charity is regarded as the matter of substance, and the gift will be sustained though it may not be possible to carry it out in the manner indicated.

3. SAME—*a gift to charity is not within rule against perpetuities.* The statute of Elizabeth concerning charitable uses (43 Eliz. chap. 4,) is in force in Illinois, and its effect is to exclude conveyances and devises to charitable uses from the operation of the rule against perpetuities.

4. SAME—*when a gift to charity will not be held invalid.* A gift in trust for a charity not in existence and the beginning of whose existence is uncertain, or which is to take effect upon a contingency which may or may not happen within a life or lives in being and twenty-one years thereafter, will be upheld, provided there is no gift of the property meanwhile to or for the benefit of any individual or any private corporation.

5. SAME—*when gift to charity is direct and immediate.* The words, "For the purpose of aiding in the establishment and support of a public library in the village of Lexington, Illinois, and in honor of my deceased parents, I direct, empower and authorize my executor to hold and apply the sum of ten thousand ($10,000) dollars as follows," etc., constitute a direct and immediate gift to charity, notwithstanding the testatrix adds conditions referring to the time and manner of the enjoyment of the gift.

6. SAME—*what does not render gift to charity invalid.* A direct gift for the purpose of aiding in the establishment of a public library is not rendered invalid by provisions requiring the organization of a regularly incorporated library association which shall include in its name the name "Smith;" that a fund be raised by the people for establishing and maintaining the library, which need not exceed $5000, and that the building to be erected with the proceeds of the gift have inscribed upon it in some appropriate place the words, "The Smith Library."

7. SAME—*the effect of renunciation upon residuary bequests.* Where a will gives the husband of the testatrix one-third of the estate, both real and personal, in fee, (except a specified piece of land,) gives certain pecuniary legacies, and devises the residue of the estate, one-third to the husband, one-third to a university and one-third to a library, the amount of the bequest to each residuary legatee is one-third of the value of two-thirds of the whole estate, less debts, pecuniary legacies and the excepted piece of land; and the renunciation of the will by the husband, while it may decrease, equally, the bequests to the other residuary legatees, cannot increase the amount actually bequeathed to them, and any excess in that amount will be distributed as intestate property under the statute.

8. DESCENT—*degree of relationship not affected by fact that it may be traced through two lines.* A person who is the son of a sister of the father of the testatrix and of her mother's brother is a cousin of the testatrix, and the degree of relationship is not affected by the fact it may be traced through two lines of descent.

APPEAL from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

RAYBURN & BUCK, for appellants.

W. H. STEAD, Attorney General, and STONE, OGLEVEE & FRANKLIN, (W. EDGAR SAMPSON, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

This appeal brings in review the decree of the circuit court of McLean county construing the will of Emilie S. VanDolah, who died on August 3, 1910, leaving surviving her Lewis S. VanDolah, her husband, and as her heirs the appellants, who were her cousins. Her will directed the payment of her debts and funeral expenses. She devised and bequeathed to her husband one-third of all her personal property and one-third of all her real estate in fee simple, except the south-west quarter of the premises in Lexington occupied by her as a homestead. She gave a number of pecuniary legacies. By the tenth clause of her will she devised a certain tract of land and $10,000 for the purpose of aiding in the establishment and support of a public library in the village of Lexington, and by the twelfth clause she disposed of the residue of her estate, giving one-third to her husband, one-third to the Illinois Wesleyan University and one-third for the purpose mentioned in the tenth clause. The controversy concerns these two clauses. The husband renounced the provisions of the will. The appellants claim that the gift for the establishment and support of a library is void and that by the husband's renunciation of the will the devise of one-third of the residue to him became ineffectual, and they say that therefore the estate is intestate as to two-thirds of the residue and that they are entitled, as heirs, to that portion of the estate. The circuit court decreed adversely to both these claims.

The tenth clause of the will is as follows: "For the purpose of aiding in the establishment and support of a

public library in the village of Lexington, Illinois, and in honor of my deceased parents, I direct, empower and authorize my executor to hold and apply the sum of ten thousand ($10,000) dollars as follows: Upon the organization of a regularly incorporated library association by the people of Lexington, Illinois, the name of which corporation shall include in it and as a part of it the name of Smith, and that upon provision being made by the people of Lexington, Illinois, and such other persons as may desire, for a fund for the use of said library association sufficient, together with the fund of $10,000 aforesaid, to properly establish and maintain said library, the sufficiency of which fund shall be in the discretion of my said executor but which need not exceed the sum of five thousand ($5000) dollars, then and in that case my said executor shall pay to the proper officers of said library association the said sum of $10,000, but upon condition that such portion of said $10,000 as my said executor shall deem proper, or all of said sum if my said executor shall deem best, shall be expended in the erection of the building for the use of such library, and the plan of said building shall be subject to the approval of my said executor; and upon the further condition that said building shall be erected upon the southwest quarter ($\frac{1}{4}$) of the premises in Lexington, Illinois, now occupied by me as a homestead, which said south-west quarter of the said premises so occupied by me as a homestead I direct, empower and authorize my executor to convey to the said incorporated company for the purpose aforesaid when in his judgment the necessary conditions have been complied with, and said building shall have inscribed upon it in some appropriate place the words, 'The Smith Library.' And whereas I contemplate the establishment of a library, as before described, during my lifetime, I provide further, and as qualifying what has been hereinbefore provided with reference to such a library, that in case I shall in my lifetime, either by myself or in co-oper-

ation with the people of Lexington, make donations for the establishment of a library as aforementioned, I will keep an account of the amount I shall so donate, and the amount I shall so donate shall be deducted from the $10,000 placed at the disposal of my executor, as aforesaid."

The appellants' position as to this clause is, that the incorporation of a library association by the people of Lexington, having the name of Smith as a part of its name, and the provision of a fund for the establishment and maintenance of such library, are conditions precedent to the gift for aiding in the establishment and support of the library, and that they are uncertain events, which may not happen within the time prescribed by the rule against perpetuities, and therefore render the gift void as a violation of that rule and for uncertainty and remoteness. The Attorney General, who was a defendant, contends, on behalf of the public, that clause 10 is a valid gift to charity.

The gift for the purpose of aiding in the establishment and support of a public library was a gift to a charity. (*Mason* v. *Bloomington Library Ass'n,* 237 Ill. 442.) Such gifts are looked upon with peculiar favor by the courts, which take special care to enforce them, and every presumption consistent with the language used will be indulged to sustain them. If a testator has manifested a general intention to give to charity, the charity is regarded as the matter of substance, and the gift will be sustained though it may not be possible to carry it out in the particular manner indicated. (*Heuser* v. *Harris,* 42 Ill. 425.) The language of the bequest here is a plain direction to the executor to hold and apply $10,000 for the purpose of aiding in the establishment and support of a public library in Lexington, and if the clause had stopped there, perhaps no question would have arisen in regard to the gift. The intention to give to the library is sufficiently manifested, but it is claimed that the subsequent provisions attach conditions to the gift which are precedent to its taking effect and

violate the rule against perpetuities. These, however, refer only to the time and manner of the enjoyment of the gift. The testatrix might have appointed trustees to carry her wishes into effect and provided for their succession in office, but she preferred a corporation authorized by law. She required the name of Smith to be used as a part of the name of the library and the provision of a fund, the minimum of which she did not fix though she stated it need not exceed $5000. These conditions would, no doubt, in a bequest to an individual be regarded as conditions precedent to the vesting of the equitable interest and obnoxious to the rule against perpetuities. Not so ,in a bequest to charity. The statute of Elizabeth in regard to charitable uses (43 Eliz. ch. 4,) is in force in this State, and its effect is to exclude conveyances and devises to such uses from the operation of the rule against perpetuities. (*Heuser* v. *Harris, supra; Crerar* v. *Williams,* 145 Ill. 625.) Though a private trust cannot be created in perpetuity, that rule has no application to a gift for charitable uses.

It is insisted, however, that there is no direct gift but only an authority to the executor to pay and convey to the proposed library association when the conditions as to incorporation and the provision of a fund have been complied with, and that where the gift itself is thus conditional it is subject to the same rules and principles as any other estate and if in violation of the rule against perpetuities must fail. This is not a correct view of the gift. Neither the organization of the corporation nor the provision of a fund is a condition precedent to the vesting of the gift. The gift itself is not conditional, but is an absolute and immediate devotion of the sum of $10,000 to the purposes of the will in connection with the library. The language is: "For the purpose of aiding in the establishment and support of a public library in the village of Lexington, Illinois, * * * I direct, empower and authorize my executor to hold and apply the sum of $10,000." This is a present direction to

hold that sum, of money for the purpose indicated, and it takes effect at the same time as the will. The money is to be held from that time for that purpose and to be applied in the manner stated. The gift is not to the corporation to be created, but to the public. The corporation is a means for making the gift effective and not the donee for whose benefit it is given, and the gift will be upheld though the corporation may never be created. *Crerar* v. *Williams, supra; Ingraham* v. *Ingraham,* 169 Ill. 432.

In Perry on Trusts (vol. 2, sec. 736,) it is said, that "if a testator ties up his property for a term, by possibility, longer than a life or lives in being and twenty-one years and nine months, and then gives it over to a charity, the gift to the charity is void because of the perpetuity in the first taker. But a gift may be made to a charity not *in esse* at the time, to come into existence at some uncertain time in the future, provided there is no gift of the property in the first instance, or perpetuity in a prior taker." These statements are quoted with approval in the cases just cited, which hold that a gift in trust for a charity not in existence and the beginning of whose existence is uncertain, or which is to take effect upon a contingency which may not happen within a life or lives in being and twenty-one years, will be upheld, provided there is no gift of the property meanwhile to or for the benefit of any individual or any private corporation. To the same effect are *Odell* v. *Odell,* 10 Allen, 1, *Woodruff* v. *Marsh,* 63 Conn. 125, *Russell* v. *Allen,* 107 U. S. 163, and many other cases.

In *Almy* v. *Jones,* 17 R. I. 265, it is said that a trust for charitable uses may depend for its going into effect upon a condition to be performed by others which may or may not be performed within the period allowed. The bequest there held valid against the objection that it violated the rule against perpetuities was a gift of $25,000 as a fund for an art institute in the city of Providence. When the citizens of Providence should have contributed the funds

necessary to found an institute worthy of the city for the promotion of art, then the sum, with accumulated interest, was directed to be permanently invested, the interest, only, to be used for the benefit of the institute for all time.

In *Webster* v. *Wiggin,* 19 R. I. 73, one-half the income of a fund was directed to be devoted to the payment of the salaries of additional teachers in the public schools of Providence, or, if the city refused to co-operate in this design, to the establishment of schools in accordance with certain regulations. The application of the income in either case was not to occur until the fund, with its accumulations, amounted to $500,000, which might not occur within the time limited by the rule against perpetuities. It was held, however, that the rule had no application, the fund, in the meantime, being devoted to charity.

In *School Land Comrs.* v. *Wadhams,* 20 Ore. 274, a devise in trust for the benefit of the First Presbyterian Church of the town of Upper Astoria was held good though there was not any First Presbyterian Church, or any Presbyterian church organization, association or society, in Upper Astoria.

In *Jones* v. *Habersham,* 107 U. S. 174, a bequest "to the first Christian church erected or to be erected in the village of Telfairville, in Burker county, or to such persons as may become trustees of the same," was sustained.

The tenth clause of the will is a valid gift to a public charity.

The testatrix's husband having renounced the will, that part of the residuary clause which gave to him one-third of the residue of the estate became inoperative, and he became entitled, if he should so elect, to take one-half of all the real and personal estate after the payment of debts. In view of this, the court decreed that one-half the residue passed under the will to the Illinois Wesleyan University and one-half to be held for the purpose of the library. The provisions made by the will for the surviving husband be-

came inoperative when he renounced the will but all its other provisions remained in force. The amount of the residuary bequest to each residuary legatee is one-third of the amount of two-thirds of the estate, less the debts, the pecuniary legacies and the south-west quarter of the homestead, and each of the two, other than the husband, is entitled to receive this amount. If by reason of the renunciation of the will this amount is reduced below what it would otherwise be, the bequests to the two residuary legatees must be reduced equally but they cannot be increased.

It is argued that the renunciation of the provisions of the will by the husband does not cause the property bequeathed to him to become intestate but that it will pass under the residuary clause. This proposition is correct, and the one-third of the testatrix's property devised to her husband by his renunciation becomes, together with all the rest of the estate not otherwise disposed of, subject to the residuary clause of the will. This clause, however, gives to the husband himself one-third of the residuary estate. This one-third is not to be divided, as was done by the decree, between the other two residuary devisees. The share of the residuary estate bequeathed to each of the three residuary devisees is fixed by the will and is several. The will contains no provision for the disposition of the share of one which shall lapse for any reason.

Our attention is called to section 79 of chapter 3 of the Revised Statutes, which provides that in cases of the renunciation of a will and the consequent increase or diminution of legacies and bequests the loss or gain shall be equalized in a ratio corresponding to the amounts of such legacies or bequests. The effect of this section is not to change the devise of one-third of the residue to a devise of one-half the residue upon the renunciation of the will. If the effect of the renunciation is to increase the amount or value of the two-thirds devised to the remaining residuary devisees the increase will be divided between them; if

the effect is to diminish the amount or value they must divide the loss, but they are not entitled to receive any part of the one-third of the residue devised to the husband unless it is necessary to equalize the amount received with what it would have been had there been no renunciation. If the amount of the residuary estate is not diminished by reason of the renunciation and is not exhausted by the bequest to the Illinois Wesleyan University and the library, the remainder, under section 12 of the Statute of Descent, must be distributed in the same manner as the estate of an intestate. Neither the value of the estate nor the amount of the debts against it appears from the record. When the bill was filed and when the cause was heard the year for filing claims aginst the estate had not expired. It cannot, therefore, be known whether the effect of the renunciation was to diminish or increase the residuary estate. If the debts are just equal to one-third of the value of the estate the renunciation will not affect the residue, while if they exceed one-third the value of the estate the renunciation will increase the residue above what it would have been if the husband had taken under the will, and if they are less than one-third the value of the estate the renunciation will reduce the residue below what it would have been if the husband had taken under the will. Whether the residue is increased or diminished by the renunciation, the amount actually bequeathed by the will to the two remaining residuary legatees is not affected. It may be more or less than the half of the actual residue remaining when the estate is finally settled, and it was error for the court to decree one-half of such residue to the Illinois Wesleyan University and one-half to the library.

It is urged that the court erred in not finding that the appellant Charles Hopkins was related to the testatrix in the same degree on both her maternal and paternal sides. He was the son of her father's sister and her mother's brother. It was immaterial. He was her cousin, and the

degree of his relationship was not affected by the fact that it could be traced through two lines of descent. There could be no representation in this case.

Since by his renunciation of the will the husband of the testatrix has become entitled to one-half of the real estate, including the tract devised for the library, the decree should provide that in any division which may be made of the estate his interest shall be assigned out of property other than that so devised.

The decree is reversed and the cause remanded to the circuit court with directions to re-enter the decree, except that it shall be decreed that in any division of the real estate which may be made, the interest of Lewis S. Van-Dolah, the surviving husband, shall be assigned to him out of land other than the tract devised by the tenth paragraph of the will for a library, and that upon the final settlement of the estate the Illinois Wesleyan University will be entitled to receive an amount equal to one-third of the value of two-thirds of the estate, less the debts, costs, legacies and special devises, and that a like amount shall be held in trust for aiding in the establishment and support of a library, as provided in the tenth clause of the will, and that the cross-complainants shall be entitled, in equal shares, to whatever surplus there may be, and that if the residue of the estate, after the payment of the debts, costs, legacies and special devises, does not equal the amount to which the Illinois Wesleyan University and said library trust fund are found to be entitled, such residue be equally divided between them.

*Reversed and remanded, with directions.*